**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARRY C. SMART,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 10-1096** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Jones, J.                                                    May 23, 2013

Plaintiff, an African-American Sergeant in the Philadelphia Police Department, sued members of the Philadelphia Police Department in their individual capacities and the City of Philadelphia under federal and state laws. Sergeant Larry Smart ("Plaintiff"), who has been employed as a police officer with the City of Philadelphia since February 1990 and has been a Sergeant since 1997, alleges that Defendants treated him unfairly because of his race and in retaliation for his protected actions. Defendants have moved for partial summary judgment on all four of Plaintiff's claims. Now pending before the Court is Defendants' Motion for Partial Summary Judgment (Dkt. No. 28), including their Statement of Undisputed Material Facts ("Ds.' SOF") (Dkt. No. 29), as well as Plaintiff's opposition brief ("Pls. Resp.") and factual counterstatement ("Pl. SOF") (Dkt. No. 31), and Defendants' Reply (Dkt. No. 33). For the reasons set forth below, Defendants' Motion will be GRANTED in part and DENIED in part.

## I.      Facts

The Court recites the undisputed facts as viewed in the light most favorable to Plaintiff.

### 1.     *March 20, 2008 – The Home Depot Parking Lot*

On March 20, 2008, Plaintiff, who was off duty at the time, pulled into the parking lot of the Home Depot in Northeast Philadelphia.  The person who parked next to Plaintiff, Jose

Maldonado, claimed that Plaintiff hit Maldonado's car with the door of Plaintiff's vehicle. (Ds.' SOF ¶ 12; Smart Dep. 51:3-15;54:8-11). Plaintiff states that he walked away calmly, only to be followed by Mr. Maldonado, who was now brandishing a tire iron, shouting, and threatening to damage Plaintiff's car. (Pl. SOF ¶ 16; Smart Dep. 51:3 – 53:4). William Rosario was in the parking lot and saw Maldonado threatening to hit Plaintiff's car, causing him to call 9-1-1 and report that a man was wielding a tire iron as a weapon.(Pl. SOF ¶ 18; Ex. P-4).

Police Officers Anita Miller and Mark Mroz responded to a radio call reporting an "auto accident with a man with a crowbar." (Pl. SOF ¶ 19; Pl. Resp. ¶ 1; Ds.' SOF ¶ 13; P-16; Anita Miller Dep., Nov. 22, 2010, at 17:9-20:10, 22:8-23:8 [hereinafter Miller Dep., Ex. D-D]). When she arrived at the Home Depot parking lot, Officer Miller was flagged down by Mr. Maldonado waving his hands at her. (Ds.' SOF ¶ 14; Pl. Resp. ¶ 14; Miller Dep. 19:15-22, 26:8-13). When the Officers came into contact with Mr. Maldonado, Officer Miller asked him if he had pulled out a crowbar; Plaintiff denied having pulled out any weapon and advised Officer Miller that Mr. Maldonado was the person brandishing the weapon.  (Pl. SOF ¶¶ 20,22 Ex. P-20: Pl. Resp. ¶ 17; Smart Cert. ¶ 18; Smart Dep. 53:5-14). The Officer allegedly asked for Plaintiff's identification and he pulled out his wallet, his police badge, and told her he would get his insurance card from his car. (Pl. SOF ¶ 23; Smart Cert. ¶ 19).

Defendants maintain that when Plaintiff returned from Home Depot, Officer Miller exited her vehicle and told both Plaintiff and Mr. Maldonado that minor vehicular damage was "not a reason to fight." (Ds.' SOF ¶ 18, n. 1; Miller Dep.  29:5-31:10). Defendants state that Plaintiff insisted that he had done nothing wrong. (Ds.' SOF ¶ 18, n. 1; Miller Dep. 31:11-13; 32:21-33:1). Officer Miller testified that she then told Plaintiff that she wanted to show him how he might have damaged Mr. Maldonado's car. (*Id.* 34:4-10). When Plaintiff countered that nothing

happened, Officer Miller recalled stating to him, "obviously something did happen here" because of the damage on Mr. Maldonado's vehicle. (*Id.* 34:21 – 35:9).

Plaintiff alleges that he started walking to his front passenger door to get his insurance information and Officer Mroz, without any warning or instruction, grabbed Plaintiff, shouted obscenities, shoved him against Mr. Maldonado's van, and caused Plaintiff to sustain serious injuries and cuts to his head. (Pl. SOF ¶ 23; Smart Cert. ¶ 19; Smart Dep. 55:13 – 23). Officer Miller later confirmed that Officer Mroz "touched" Plaintiff on the arm, (Miller Dep. 56:4-11), without reading Plaintiff his rights or telling Plaintiff he was under arrest. (*Id.* 59:19 – 60:11).

Plaintiff contends that the "touch" was a "grab," and that Plaintiff identified himself as an off-duty Sergeant in the City's Police Department, but that Officer Mroz would not listen and kept cursing at Plaintiff. [1] (Pl. SOF ¶ 23; Smart Cert. ¶ 19). Plaintiff states that Officer Miller then jumped in, started cursing, screamed that Plaintiff "hit her," and grabbed his neck. (Smart Dep. 55:24 – 56:19). Ms. Jennifer Aquije reported that Officer Miller jumped in front of Plaintiff and accused him of pushing her, but Plaintiff told Officer Miller not to lie and that he was a police sergeant. (Statement of Jenny Aquije, Mar. 20, 2008 [hereinafter P-17]). Officer Mroz testified that Plaintiff had not hit Officer Miller. (Pl. SOF ¶ 51; Mark Mroz Dep., Oct. 12, 2010, at 92:5-8 [hereinafter Mroz Dep.]; Ex. P-C; Ex. P-3). Officer Miller also testified that Plaintiff did not strike Officer Mroz, and was only "pushing at him to try to get away." (Pl. SOF ¶ 51; Ex. P-3). Plaintiff contends that throughout this fight, he was holding his ID in his hand and asking for a supervisor. (Smart Dep. 55:24 – 56:19).

---

[1] A witness, Ms. Jennifer Aquije, was interviewed by the Internal Affairs Bureau ("IAB") on March 20, 2008, and reported that she saw the police grab Plaintiff, push him against the car, and curse at Plaintiff. (*Id.* ¶ 63; P-17). She testified that she heard Officer Mroz tell Plaintiff, "I am the fucking officer here not you," and she heard Plaintiff tell the officers that they were making a mistake and that he was a sergeant. (*Id.* ¶ 63; P-17). Another eyewitness, Ms. Joseyveth Miranda, provided a statement explaining that Plaintiff tried to show Officer Mroz his identification and advised the officers that he was a police sergeant to which Officer Mroz replied, "Shut the fuck up, I am the police officer here." (*Id.* ¶ 65; Joseyveth Miranda Dep., Oct. 21, 2010, at 11:23 – 12:18 [hereinafter Miranda Dep.]).

Officer Miller contends that after she spotted a nightstick in Plaintiff's car, she then asked Plaintiff if he was a police officer twice, and Plaintiff responded that "it has nothing to do with this." (*Id.* 45:23-55:2). Officer Mroz stated that he also asked Plaintiff if he was an officer and Plaintiff did not respond. (*Id.* 51:22 – 52:1). Officer Miller testified that upon Plaintiff's refusal to identify himself after Officer Mroz's question, Officer Mroz told Plaintiff that he would have to sit in the police car while the officers figured out his identity. (*Id.* 52:2-6). Then, according to Officer Miller, Plaintiff refused to go to the vehicle and "swung his hand backwards and hit Officer Mroz in the chest." (*Id.* 56:12-60:16). A struggle ensued between Plaintiff and the two officers. (*Id.* 62:18-22). Officer Miller reported that only after Plaintiff hit Officer Mroz did Officer Mroz pin Plaintiff to the car. (Miller Dep. 62:24 – 63:7). Officer Miller testified that Plaintiff only stated that he was a police sergeant during the struggle, (*Id.* 71:16-20), and only provided his identification upon the arrival of Sergeant Francis Barclay. (*Id.* 81:13-82:6).

## 2. *The Internal Affairs Bureau after the Home Depot Incident*

After the altercation, Officer Mroz called for an "assist" and held Plaintiff until other officers, including Sergeant Barclay, arrived on the scene. (Pl. SOF ¶ 25; Miller Dep. 77:5-79:6). After Lieutenant Lisa Harner arrived, Plaintiff reported Officers Mroz's and Miller's actions to her and said that he had immediately produced his identification. (Pl. SOF ¶ 60; Ex. P-8). Lt. Harner instructed Plaintiff and the officers to go to the IAB. [2] (Ds.' SOF ¶ 19; Pl. Resp. ¶ 19; Pl. SOF ¶ 28; Harner Dep. at 31:2-32:12; Miller Dep. 89:1-13). Plaintiff was transported to the IAB, in the back seat of Lt. Harner's police vehicle. (Ds.' SOF ¶ 22; Pl. Resp. ¶ 22; Pl. SOF ¶ 30; Ds.' Resp. ¶ 30; Harner Dep. 31:2-32:12). At the IAB, Plaintiff contends that he was searched,

---

[2] The Philadelphia Police Department has no written policy that an off-duty police officer who is not under arrest should be ordered to the IAB while the officer is still off-duty. (Pl. SOF ¶ 28).

photographed, had his cell-phone confiscated, and was placed in a "lock-room" for five hours without being interviewed. (Pl. SOF ¶ 31; Smart Cert. ¶ 27).

Captain Shawn Trush served as IAB Commanding Officer on that day. (Pl. SOF ¶ 33). Capt. Trush ordered the towing of Plaintiff's car and subsequently removed Plaintiff from street duty and restricted his police powers. (Pl. SOF ¶¶ 34,76; Ds.' Resp. ¶ 34; Exs. P-21, P-G). Plaintiff alleges that Capt. Trush consulted with other named parties and received orders from Commissioner Charles Ramsey dictating actions to take against Plaintiff. (Pl. SOF ¶ 33).

Plaintiff testified that he complained to Sgt. Barclay that Officers Mroz and Miller were subjecting him to mistreatment based on his race on March 20, 2008 following the Home Depot parking lot incident. (Pl. SOF ¶ 26, Smart Cert. ¶ 22).

### 3. *Direct Commissioner's Action Suspension*

On November 4, 2008, Commissioner Ramsey and the City of Philadelphia sentenced Plaintiff to a thirty-day suspension without pay on two charges through a Direct Commissioner's Action. (Pl ¶ 39; Smart Cert. ¶ 35; Smart Dep. 31:19-21; 96:12 - 98:20; Ex. P-86). The first charge was that Plaintiff was "less than truthful [about the Home Depot incident] during [his] interview[s]" with the IAB on June 23, 2008 and September 15, 2008. (Ex. P-86). Internal Affairs determined that Plaintiff's recollection of events was false and stood in contrast with the recollections of Officer Miller, Officer Mroz, Sgt. Barclay, and Lt. Harner. (*Id*). On the second charge, Plaintiff was charged with "Repeated violations of Departmental rules and regulations" showing little or no regard for the police force. (*Id*). Commissioner Ramsey, Sgt. Barclay, Lt. Harner, Capt. Trush, and the City of Philadelphia never disciplined Officers Mroz and Miller for the altercation with Plaintiff. (Pl. SOF ¶ 40; Smart Cert. ¶ 36).

### 4. *The PHRC Complaint, October 14, 2007 Incident, and Neglect of Duty Suspension*

Prior to the Home Depot incident, Plaintiff had filed a race discrimination complaint with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunities Commission against the City of Philadelphia, Captain Khalid Syed (not a named party in this suit), and the Philadelphia Police Department. (Pl. SOF ¶ 6; Smart Cert. ¶ 6; Ds.' SOF ¶ 9; Pl. Resp. ¶7, 9; Smart Dep. 37:6-9, 39:11-20, 42:18 – 43:14; Ex. P-61). The complaint alleged a number of discrete incidences of discrimination by Capt. Syed. The complaint alleges that Capt. Syed prevented Plaintiff from authorizing disciplinary action against an insubordinate subordinate, whereas Caucasian supervisors in similar situations were granted authority to do so. (Pl. SOF ¶ 7, Smart Cert. ¶ 7; Smart Dep. 38:9 - 49:3; Ex. P-61). This complaint addressed an October 14, 2007 incident at an accident scene, the facts of which remain disputed.

On February 8, 2008, Plaintiff was charged with "Neglect of Duty" related to the October 14, 2007 accident scene, charging him with "fail[ing] to notice that [the victim] was bleeding from his head and ear and that there was a large amount of blood on the ground. [Plaintiff] contacted [the] Corporal…and told her there were only minor injuries sustained," which led to the Corporal ordering him to clear the scene because the injuries were only "minor," thereby contaminating the scene when it should have been secured because the injuries were actually "severe." (Ds.' SOF ¶ 7; Smart Dep. 26:11 – 15; Ex. D-B)..

On March 17, 2008, the City Solicitor filed the City's Answer to Plaintiff's complaint. (Pl. SOF ¶ 15; Ds.' Resp. ¶ 15; Smart Cert. ¶ 15).

On June 27, 2008, Plaintiff received a three-day suspension for the October 14, 2007 events−the same events he had complained about in his January 22, 2008 PHRC complaint. (Pl. Resp. to Ds. Mot. for Partial Summ. J., at 21, 24, 27-28; Pl. SOF ¶ 38; Ex.P-84). This suspension followed his charge from Capt. Syed's investigation, and the February 8, 2008 formal charging

of Plaintiff with "Neglect of Duty" related to the October 14, 2007 accident. (Ds.' SOF ¶ 7; Smart Dep. 26:11 – 15; Ex. D-B).

## II.      Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. An issue is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. *Anderson*, 477 U.S. at 249. In reviewing a motion for summary judgment, the court does not make credibility determinations and "must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.      Discussion

### A.      Count I: 42 U.S.C. § 1981 Violation by way of Enforcement through § 1983

In Count I of his Complaint, Plaintiff alleges that Police Officers Anita Miller and Mark Mroz, Commissioner Charles Ramsey, Deputy Commissioner Gattens, Captain Shawn Trush,

Sergeant Francis Barclay, Lieutenant Lisa Harner, and the City of Philadelphia violated 42 U.S.C. § 1981 and subjected Plaintiff to (1) differential treatment on account of his race; (2) a hostile work environment, and (3) retaliation, adverse employment actions after he opposed or complained of race discrimination. (Compl. ¶¶ 47-48). This Court grants summary judgment on all claims under Count I as to all Defendants.

### 1. Differential Treatment Claims

Claims brought under § 1981 are subject to the three-pronged burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). In the first step of the *McDonnell Douglas* burden-shifting framework, an employee must successfully establish a prima facie case by asserting: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). If Plaintiff establishes a *prima facie* case, the analysis proceeds to step two of the *McDonnell Douglas* framework, and the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas,* 411 U.S. at 802. Finally, if Defendant establishes a legitimate, nondiscriminatory reason, step three of the *McDonnell Douglas* framework requires that the burden reverts back to Plaintiff to show that Defendant's proffered reasons are untrue or pretextual. *Id.* Plaintiff contends Defendants[3] subjected him to differential

---

[3] Disparate treatment claims against Capt. Trush, Commissioner Ramsey, and the City of Philadelphia will be considered by the Court. Claims for disparate treatment against Deputy Commission Gattens, Lt. Marie Lisa Harner, Sgt. Francis Barclay, Officer Mark Mroz, and Officer Anita Miller are dismissed as they are deemed abandoned. In his Complaint, Plaintiff does not identify which Defendants he is charging with disparate treatment claims. (Compl. ¶¶ 46-49). In his Response to Defendants' Motion for Partial Summary Judgment, Plaintiff only refers to three Defendants regarding his claim of disparate treatment: Capt. Trush, Commissioner Ramsey, and the City of Philadelphia. (Pl. Resp. 9). Because Plaintiff failed to address his Complaint's claims against the remaining Defendants (Deputy Commissioner Gattens, Lt. Marie Lisa Harner, Sgt. Francis Barclay, Officer Mark Mroz, and Officer Anita Miller), these claims are abandoned. *See Glenn v. Raymour & Flannigan,* 832 F. Supp.2d 539, 547 (deeming claims not addressed in Plaintiff's response to Defendants' motion for summary judgment abandoned); *Seals v. City of Lancaster*, 553 F. Supp.2d 427, 432–33 (E.D. Pa.2008) (holding that failure to mention Plaintiff's

treatment on three different occasions: 1) March 20, 2008 [the Home Depot incident]; (2) June 27, 2008 [three-day suspension related to the events Plaintiff had complained about in his January 2008 PHRC Complaint]; and 3) November 4, 2008 [thirty-day suspension for conduct unbecoming of an officer, based on the Home Depot incident]. For each of the three adverse employment actions, Defendants challenge the fourth prong needed to establish Plaintiff's *prima facie* proof–that these circumstances give rise to an inference of discrimination. Such an inference arises where "similarly situated persons not within the protected class were treated more favorably [than plaintiff]." *Sarullo v. USPS*, 352 F.3d, 789, 798 n.7 (3d Cir. 2003).

The Court agrees that Plaintiff has failed to satisfy the fourth prong and thus, fails to meet the burden for his *prima facie* case against all Defendants. Because Plaintiff alleges that differential treatment occurred on three separate dates, the Court addresses each in turn.

### a. March 20, 2008

Plaintiff alleges that on March 20, 2008 he suffered an adverse employment action when Captain Shawn Trush ordered that Plaintiff stay in a "lock room" at the IAB for over five hours, whereas Officers Mroz and Miller, who were also involved in the Home Depot incident, were "treated more favorably than him." Plaintiff's argument misses the mark because Officers Mroz and Miller are not similarly situated employees, as is necessary to support an inference of discrimination. *See Sarullo*, 352 F.3d at 798 n.7.

To show that an employee is "similarly situated," relevant aspects of employment need to be nearly identical. *McCullers v. Napolitano*, 427 F. App'x 190, 1975 (3d Cir. 2011) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). In disciplinary cases in which

original claims in her summary judgment response constitutes abandonment of those claims)*; Hackett v. Cmty. Behavioral Health*, 2005 WL 1084621, at *6 (E.D.Pa. May 6, 2005) (stating that failure to address claims waives opportunity to contest summary judgment on that ground).

a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason, a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. *Id.* (citing *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir. 1995)).[4]

Plaintiff has not demonstrated that "similarly situated" officers outside of the protected class were treated differently, as is required by Third Circuit precedent. *McCullers.* 427 F. App'x at 195. Plaintiff and Officers Mroz and Miller are different ranks and have different levels of seniority in the Philadelphia Police Department (Plaintiff is a Sergeant, while Mroz and Miller are Officers). *See, e.g., Pierce*, 40 F.3d at 802 (holding that Plaintiff failed to establish similarly situated comparator because comparison was made between supervisor and someone without supervisory authority). Plaintiff and the Officers have different supervisors, and report to different Districts entirely.[5] Most persuasively, Plaintiff was off-duty, while the Officers were on-duty. The Court agrees with Defendants that Plaintiff must present some evidence that a "white sergeant – or any other 'similarly situated' police officer – who engaged in an off-duty incident with police officers was treated differently by Defendants or by the City." (Ds. Mot. for Partial Summ. J. 8). The status of being on-duty versus off-duty is a material difference, substantial enough that Plaintiff cannot meet his burden of proving his *prima facie* case. The comparison of the discipline of an off-duty Sergeant to on-duty Officers is too great a divide to withstand the burden for the *prima facie* case, as Plaintiff has not demonstrated that similarly

---

[4] Such a showing normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Byrd* 61 F.3d, at 1032 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)).

[5] One argument in favor of the Officers being "similarly situated" with Plaintiff is that while the Plaintiff and Officers Mroz and Miller have different supervisors, the disciplinary actions taken in response to the events of March 20, 2008 were decided through the IAB process. This potential factor in favor of Plaintiff's contentions does not outweigh the balance of the determination that the Officers are not "similarly situated" with Plaintiff.

situated police officers were treated differently in any way. As such, Plaintiff has not established any facts that create any inference of discrimination and thus cannot prove his *prima facie* case.

### b. June 27, 2008

On June 27, 2008, Plaintiff received a three-day suspension for the incident he complained of in his January 2008 PHRC complaint. (Pl. Resp. to Ds. Mot. for Partial Summ. J., 21, 24, 27-28; Pl. SOF ¶ 38; Ex.P-86). As with the March 20, 2008 incident, Plaintiff has failed to state a *prima facie* case of racial discrimination for the June 27, 2008 event against Commissioner Ramsey. Plaintiff failed to provide any examples of other similarly situated persons outside of his protected class who received different disciplinary measures for circumstances similar to the October 14, 2007 incident; this claim should be dismissed for failure to state a *prima facie* case.

### c. November 4, 2008

Plaintiff failed to state a *prima* facie case of racial discrimination against Commissioner Ramsey for the November 4, 2008 action. On November 4, 2008, Commissioner Ramsey and the City of Philadelphia sentenced Plaintiff to a thirty (30) day suspension without pay. Again, Plaintiff failed to prove the fourth prong of the *prima facie* case. According to the Direct Action, Plaintiff was punished solely based on the testimony of the Officers and other police department officials involved in the March 20, 2008 incident. Similar to his claims about the adverse employment action taken against him on March 20, 2008, Plaintiff again compares himself to Officers Mroz and Miller, who did not receive suspensions. Plaintiff failed to prove his *prima facie* comparison because Officers Mroz and Miller are not similarly situated. Likewise, this claim should be dismissed and the Court does not need to analyze the second two steps of the *McDonnell Douglas* framework.

### d. Remaining Claim against City of Philadelphia

Section 1981 authorizes the imposition of liability on the City based on "official misconduct under color of state law by the City's police officers." *Mahone v. Waddle,* 564 F.2d, 1018, 1031 (3d Cir. 1977). To determine if the claim against the City of Philadelphia persists, the question is whether the decisions of Commissioner Ramsay and Capt. Trush could be classified as "official misconduct," done in the act of their official duties, "under the color of state law." As such, if the individual claims against either Commissioner Ramsey or Capt. Trush survive, then the claim against the City of Philadelphia survives. Because the Court has dismissed the claims against Capt. Trush and Commissioner Ramsey for Plaintiff's failure to state a *prima facie* case, the claims against the City of Philadelphia should likewise be dismissed.

### 2. Hostile Work Environment Claim

Plaintiff brought a hostile work environment claim under 42 U.S.C. § 1981 against all Defendants. (Compl. ¶ 47). In his Response to Defendants' Motion, however, Plaintiff did not once reference the hostile work environment claim. Moreover, when outlining his refutation of the Partial Summary Judgment Motion, Plaintiff explicitly left out the hostile work environment claim from his list of 42 U.S.C. § 1981 claims. (Pl. Resp. to Ds. Mot. for Partial Summ. J., 2). The Court dismisses these claims as they have been abandoned. *See Glenn,* 832 F. Supp.2d at 547; *Seals*, 553 F. Supp.2d at 432–33; *Hackett*, 2005 WL 1084621, at *6.

### 3. Retaliation Claim

Plaintiff failed to prove his *prima facie* case to support a retaliation claim because he failed to demonstrate that the alleged adverse employment actions would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Thompson v. N. Am. Stainless, LP*, __ U.S. __. 131 S. Ct. 863 (2011) (citation omitted). To claim retaliation under 42 U.S.C. § 1981, Plaintiff must show that (1) he engaged in the protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his

participation in the protected activity and the adverse employment action. *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).

Plaintiff alleges in his Complaint that he was subject to adverse actions after complaining and opposing race discrimination by the Philadelphia Police Department. (Compl. ¶ 48-49). Plaintiff has sued Capt. Trush, Commissioner Ramsey, and the City of Philadelphia under this cause of action; all other potential claims for retaliation under § 1981 against Deputy Commissioner Gattens, Lt. Marie Lisa Harner, Sgt. Barclay, Officer Mroz, and Officer Miller are dismissed.[6]

Defendants do not dispute the first two prongs. Plaintiff engaged in two[7] distinct instances of protected activity (1) on January 22, 2008 when he filed a racial-discrimination complaint with the PHRC, and (2) on March 20, 2008 when he complained that Officers Mroz and Miller were targeting after the Home Depot incident only because he was black. To the latter point, Plaintiff testified that he complained to Sgt. Barclay, upon Barclay's arrival at the scene of the Home Depot dispute, that the Caucasian officers were subjecting him to mistreatment based on his race. (Pl. SOF ¶ 26, Smart Cert. ¶ 22). Lt. Harner corroborated this, testifying that Sgt. Barclay told her that Plaintiff told Sgt. Barclay, "that this was happening because he was black…." (Pl. SOF ¶ 59; Ex. P-8). Officer Mroz also admitted in the statement he gave to the IAB on March 20, 2008 that Plaintiff protested that "the whole incident was racial because he was black." (Pl. SOF ¶ 58, Ex. P-7). The Third Circuit has held that protected activity may consist of "formal charges of

---

[6]    In Plaintiff's Complaint, Plaintiff does not identify which Defendants he is charging with disparate treatment claims. (Compl. ¶ 46-49). In his Response to the Motion for Partial Summary Judgment, Plaintiff only refers to three Defendants regarding his claim of disparate treatment: Capt. Trush, Commissioner Ramsey, and the City of Philadelphia. (Pl. Resp. to Ds. Mot. for Partial Summ. J., at 14). Because Plaintiff failed to address his Complaint's claims against the remaining Defendants (Deputy Commissioner Gattens, Lt. Marie Lisa Harner, Sgt. Francis Barclay, P/O Mark Mroz, and P/O Anita Miller), this Court should deem these claims to have been abandoned.

[7]    Plaintiff alleges that he also complained to the Philadelphia Police Department about being subjected to a barrage of defamatory comments on Domelights.com. (Pl. SOF ¶ 41; Smart Cert. ¶ 37).  There is a dispute of fact as to whether or not Plaintiff complained to the Police Department about the content of this website. Defendants point out that in his deposition, Plaintiff admitted that he had never seen the pages in question. (Smart Dep. 90:22 – 91:2). Because Plaintiff was unable to point to anything in the record beyond his Certification, this instance of alleged protected activity was not considered by the Court.

discrimination as well as informal protests of discriminatory employment practices, including making complaints to management . . . . " *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

Just as with his differential treatment claim, Plaintiff alleges three adverse employment actions comprising his retaliation claim: (1) March 20, 2008, suspension of street duty, (2) June 27, 2008, three-day suspension related to the events of October 17, 2007, and (3) November 4, 2008 thirty-day suspension related to the events of March 20, 2008.

Defendants contest that there was any causal connection between his protected acts and the disciplinary actions. Defendants charge that Plaintiff failed to put forward any evidence that the disciplinary actions were designed to "dissuade a reasonable worker from making or supporting a charge of discrimination." (Mot. for Partial Summ. J., at 12). The Court addresses the retaliation claims as to each individual defendant.

> a. Captain Trush

When the Philadelphia Police Department seized Plaintiff's vehicle on March 20, 2008, Plaintiff had a bag that contained some hand written notes and other documents about Plaintiff's visit to the PHRC on January 22, 2008 and a copy of the PHRC complaint that Plaintiff filed against the Philadelphia Police Department. (Pl. SOF ¶ 44; Ex. P-61; Ex. P-32). Plaintiff seems to be asserting that because the police officers who searched Plaintiff's vehicle that day discovered documents regarding his previous complaint to the PHRC, the temporal proximity of this discovery with that of the disciplinary actions suggests a causal link indicative of retaliation.

There is no concrete evidence that Capt. Trush himself was aware of this information being in Plaintiff's file. However, reading the evidence in the light most favorable to Plaintiff, it is

reasonable to assume that he was aware of the PHRC file because he spoke with Capt. Syed on March 20, 2008, and would have read the IAB file.

Even beyond assuming that Capt. Trush was aware of the protected activity, however, there is nothing else that links Capt. Trush's decision to remove Plaintiff from street duty with any retaliatory animus. Plaintiff has pointed to nothing beyond Capt. Trush's likely knowledge of the protected actions. Even with all the evidence presented in the light most favorable to Plaintiff (e.g., that Capt. Trush knew about the PHRC complaint and had heard about Plaintiff's complaints of racial discrimination to his supervisors on March 20, 2008), there is simply no plausible connection between Capt. Trush's decision on March 20, 2008 and Plaintiff's protected activities. As such, this claim is dismissed.

b. <u>Commissioner Ramsey</u>

Plaintiff's claim for retaliation against Commissioner Ramsey arises out of the Commissioner's actions on three separate dates: March 20, 2008, January 22, 2008, and November 4, 2008.

Regarding the Home Depot incident on March 20, 2008, Plaintiff alleges that Commissioner Ramsey personally approved the decision to remove Plaintiff from street duty on March 20 and that Commissioner Ramsey was aware that three days earlier the City had filed its Answer to Plaintiff's PHRC complaint. Beyond this, however, there is no proof on the record to draw any conclusion that the decision to remove Plaintiff from street duty related to his filing a PHRC complaint or Plaintiff's reports to his supervisors that day. Plaintiff alleges that the fact that this occurred three days after the City filed its Answer to his PHRC complaint is telling. Plaintiff, however, filed his Complaint on January 22, 2008 (two months prior to the adverse employment action). The temporal suggestion that this alone proves the causal connection otherwise missing

is not a strong claim. This claim related to March 20, 2008 against Commissioner Ramsey should be dismissed.

Regarding the June 27, 2008 three-day suspension, which occurred roughly five months after he filed his PHRC claim, the disciplinary action only refers to the October 14, 2007 event and does not reference the March 20, 2008 event. This citation follows a November 17, 2008, warning from Capt. Syed to Plaintiff that he was the subject of an investigation and the February 20, 2008 formal charging of Plaintiff with "Neglect of Duty." Plaintiff supplies no facts or arguments that could lead one to draw the conclusion that he should not have been found to be in neglect of duty. Furthermore, Plaintiff alleges nothing establishing that other police officers that have not engaged in protected activities have been treated more favorably after being found to be in neglect of duty.

Finally, with respect to the November 4, 2008 30-day suspension, Plaintiff alleges that Commissioner Ramsey knew about the PHRC complaint, had the opportunity to review all information about the incident on March 20, 2008 (including his statements about being discriminated against), and that this adverse employment action reflects retaliation for both protected actions. Again, Plaintiff has failed to create a material issue of fact to sustain a claim for retaliation on either claim.

To the former, even assuming that Commissioner Ramsey knew about every detail of the PHRC complaint and the City's Answer, which Defendants contest, there is still no further evidence on the record that the 30-day suspension was the result of retaliatory animus for the filing. To the latter, Plaintiff gets closer to proving his *prima facie* case, yet still falls short. Plaintiff was charged in the Direct Action with lying to the IAB. In his IAB interview, he reported his actions, including his allegations of discrimination. Defendants agree that there is a

material issue of fact as to what actually happened in the Home Depot parking lot. Under Plaintiff's version of events in the Home Depot parking lot, Plaintiff's subsequent interviews with the IAB did not contain lies. Thus, Plaintiff alleges that the Direct Action's charge for "false reporting" was a proxy for punishing him for reporting racial discrimination. However, again, while more persuasive because of the factual disputes in the record, Plaintiff has still failed to produce any causal connection beyond his conjecture between the reporting of racial discrimination and the Direct Action. This Court disagrees that this tenuous relationship alleged under Plaintiff's version of the facts would dissuade a reasonable person from engaging in protected actions. Based on the foregoing, it is clear that the motion for summary judgment should be granted for all Defendants with regard to Plaintiff's retaliation claims.

### c. City of Philadelphia

Defendants argue that the City of Philadelphia should not be held liable for retaliation because Plaintiff failed to produce evidence that the City engaged in a policy, practice or custom of retaliation. (Mot. for Partial Summ. J. 13)*; see also Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). The Court agrees. Plaintiff failed to produce any evidence on the record that the City had in force any policy, practice, or custom of retaliation that led to the adverse employment actions suffered by Plaintiff. All claims against the City should be dismissed.

### B. Counts II & III: Defendants' Actions Violated 42 U.S.C. § 1983 under His First, Fourth, and Fourteenth Amendment Rights [8]

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

[8] In Plaintiff's original complaint, Claim II was a general, undefined complaint under section 1983, while Claim III specified "individual Police Officer Defendants" under the same causes of action. (Compl. ¶¶ 63-66). In Plaintiff's Response to Defendants' Motion for Partial Summary Judgment, they describe these claims together. Similarly, this opinion addresses these claims together, clarifying which Defendants are actually charged with each alleged offense.

jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress.

To maintain a claim under § 1983, Plaintiff must demonstrate (1) that Plaintiff has been deprived of a right "secured by the Constitution and laws, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law." *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *West v. Atkins*, 487 U.S. 42, 48 (1988).

First, Plaintiff contends that his First Amendment rights were violated because he was retaliated against for opposing Defendants' unlawful discriminatory conduct in violation of the First Amendment. (Compl. ¶¶ 51-52, 59). Second, Plaintiff maintains that his Fourth Amendment and Fourteenth Amendment rights were violated when Defendants "provided false information about Plaintiff in order to subject him to an adverse employment action, subjected him to false arrest and detention, unlawful search and seizure of his persona and property and malicious administrative proceedings." (*Id.*¶ 53). Plaintiff reiterates this claim in the Complaint's third count, now considered in tandem with his second count, alleging that "defendants condoned unlawful arrest, unlawful detention, use of excessive force, and malicious investigation." (*Id.*¶ 63). Third, Plaintiff seeks to establish municipal liability. (*Id.*¶¶ 54-61). This Section addresses each of these three claims separately for every named Defendant and the City of Philadelphia.

1.    *Retaliation Claim under § 1983 for Violation of First Amendment*

Plaintiff states in his response to Defendants' Motion for Partial Summary Judgment that he is claiming retaliation under 42 U.S.C. § 1983 claim, but he makes no legal argument for this claim. (Pl. Resp. to Ds. Mot. for Partial Summ. J. 14).   As such, this claim, against all defendants, is dismissed and deemed abandoned.  *See Glenn*, 832 F. Supp.2d at 547; *Seals*, 553 F. Supp.2d at 432–33; *Hackett,* 2005 WL 1084621, at *6.

2.      *Fourth and Fourteenth Amendment Violations against Named Defendants*

Plaintiff sued Officers Mroz and Miller, Capt. Barclay, Lt. Harner, Capt. Trush, and Commissioner Ramsey, for violating his Fourth and Fourteenth Amendment rights to be free from search and seizure without probable cause. (Compl. ¶¶ 53, 63).   It would be inappropriate to analyze Plaintiff's claims under substantive Due Process and the Fourteenth Amendment.[9]

Whether or not the Plaintiff should succeed on his Due Process claims under the Fourth Amendment is a difficult question to answer, as it turns on factual circumstances that are still the subject of much debate in this case.   In his Complaint, Plaintiff maintains that he was subject to "unreasonable searches and seizures" by Defendants, in multiple ways, including when the Defendants (a) provided false information about Plaintiff in order to subject him to an adverse employment action, (b) subjected him to false arrest and/or unlawful detention, (c) subjected him to malicious administrative proceedings, and (d) used excessive force. (Compl. ¶ 53, 63). In his Response to Defendants' Motion for Partial Summary Judgment, Plaintiff only addresses two claims of unreasonable search and seizure under the Fourth Amendment: (1) false arrest and/or unlawful detention, and (2) excessive force. (Pl. Resp. to Ds. Mot. for Partial Summ. J., 29).

First, any potential claims against Defendants for providing false information and malicious administrative proceedings are deemed abandoned by Plaintiff and dismissed.   *See Glenn,* 832 F. Supp.2d at 547; *Seals*, 553 F. Supp.2d at 432–33; *Hackett*, 2005 WL 1084621, at

---

[9]  The United States Supreme Court stated unambiguously in *Graham v. Connor*, 490 U.S. 386 (1989),  that all cases involving claims of excessive force against police officers in the course of an arrest or other seizure of a citizen should be analyzed pursuant to the reasonableness standard of the Fourth Amendment as opposed to using a substantive due process approach.   The Court reiterated this mandate in *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 (1998),  stating that the Fourteenth Amendment substantive Due Process analysis is preserved for those situations in which citizens are denied rights through means other than a law enforcement official's arrest, investigatory stop, or other seizure.   In this case Plaintiff's due process claims revolve around the Home Depot parking lot incident, in which the police were called to the area and subsequently attempted to place Plaintiff into custody.   The factual scenario of this case places it squarely in the purview of the Fourth Amendment, as the Supreme Court has articulated it.   Additionally, it seems clear that the police officers here intentionally attempted to seize Plaintiff, another factor that impels the use of the Fourth Amendment.

*6. Second, both Plaintiff and Defendants use the terms "false arrest" and "false/unlawful imprisonment/detention" interchangeably. However, "to state a Fourth Amendment claim for false arrest, a plaintiff must allege that (1) there was an arrest; and (2) the arrest was made without probable cause." *Adams v. Selhorst*, 779 F. Supp.2d 378 (D. Del. 2011) (citing *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir.1988)); *but see Williams v. City of New York*, 2012 WL 6838934 (E.D.N.Y. 2012) ("To the extent that plaintiff alleges separate claims of false imprisonment and false arrest, the court treats the claims together as one."). There was no actual arrest made in this case, so the Court will not consider a separate claim of false arrest.

The remaining claims for (1) unlawful detention/false imprisonment and (2) excessive force will be considered against all named Defendants.

To the first claim, "[t]he Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker*, 443 U.S. at 141. To the latter, the "question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Both claims relate to the events on March 20, 2008. Why the altercation started, whether or not Plaintiff followed the Officers' instructions to identify himself, who instigated physical contact, and whether Plaintiff was a flight-risk are all genuinely and materially disputed facts.

a. Officers Miller & Mroz

Defendants do not move for summary judgment on behalf of Officers Miller and Mroz on the two § 1983 claims of excessive force and unlawful detention under the Fourth Amendment because the facts disputed are material and genuine. (Ds. Mot. for Partial Summ. J., at 17). As

these are the only two remaining claims after our initial analysis, no further discussion is required.

### b. Sergeant Barclay

Plaintiff did not include Sgt. Barclay in the list of culpable parties under § 1983 claims of excessive force and unlawful detention in his Response to Defendants' Motion for Partial Summary Judgment. (Pl. Resp. to Ds. Mot. for Partial Summ. J., 29-34)). These claims against Sgt. Barclay are deemed abandoned by Plaintiff and dismissed. *See Glenn*, 832 F. Supp.2d at 547; *Seals*, 553 F. Supp.2d at 432–33; *Hackett*, 2005 WL 1084621, at *6.

### c. Lieutenant Harner

Plaintiff sued Lt. Harner for § 1983 claims of excessive force and unlawful detention. Lt. Harner instructed Plaintiff and Officers Mroz and Miller to go to the IAB. (Ds.' SOF ¶ 19; Pl. Resp. ¶ 19; Pl. SOF ¶ 28; Harner Dep. at 31:2-32:12; Miller Dep. 89:1-13). Plaintiff was transported to the IAB, in the backseat of Lt. Harner's police vehicle. (Ds.' SOF ¶ 22; Pl. Resp. ¶ 22; Pl. SOF ¶ 30; Ds.' Resp. ¶ 30; Harner Dep. 31:2-32:12).

#### i.    Unlawful Detention

The claim against Lt. Harner withstands partial summary judgment for unlawful detention in violation of unnecessary search and seizure. Plaintiff alleges that his holding at the IAB "lock room" for over five hours constituted unreasonable seizure. Lt. Harner was responsible for ordering Plaintiff to the IAB, transporting him, and overseeing his detention in the "lock room." As the facts surrounding this detention are materially disputed, and the probable cause determination behind the decision to send Plaintiff to IAB is disputed, this claim stands.

#### ii.    Excessive Force

Plaintiff's claim that Lt. Harner used excessive force on Plaintiff should be dismissed. There is no record that Lt. Harner used any objectively unreasonable force in bringing Plaintiff to the IAB; Plaintiff went peacefully to the IAB and Lt. Harner did not even put her hands on him. (Mot. for Partial Summ. J., 18). This claim should be dismissed.

        d.  <u>Captain Trush</u>

Plaintiff sued Capt. Trush for § 1983 claims of excessive force and unlawful detention. The following are the only undisputed facts. Captain Trush served as the IAB Commanding Officer on March 20, 2008. (Pl. SOF ¶ 33)..

        i.     Unlawful Detention

The claim against Capt. Trush for unlawful detention in violation of unnecessary search and seizure remains. Plaintiff alleges that his holding at the IAB "lock room" for over five hours constituted unreasonable seizure. Capt. Trush was in charge of the IAB on this day; he ordered that Plaintiff remained in the "lock room;" and, he was responsible for the failure to interview Plaintiff, and the determination to seize Plaintiff's vehicle. If all the materially disputed facts are true as stated by Plaintiff, Capt. Trush could be liable for violating § 1983 because no probable cause predicated this detention.

        ii.    Excessive Force

Plaintiff's claim that Capt. Trush used excessive force should be dismissed. There is no dispute in the record that Capt. Trush did not physically interact with Plaintiff nor use any unreasonable force to detain him.

        e.  <u>Commissioner Ramsey</u>

Plaintiff argued that in his supervisory capacity, Commissioner Ramsey was responsible for failing to rectify the alleged illegal acts of Officers Mroz and Miller. (Pl. Resp. to Ds. Mot. for

Partial Summ. J., at 31-34). "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." *Robinson*, 120 F.3d at 12934 (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). "[A]ctual knowledge and acquiescence" of subordinate's violation of another employee's constitutional rights are sufficient to demonstrate this "personal involvement." *Id.* Assuming Plaintiff's version of events are true, the question becomes whether or not Commissioner Ramsey knew about the supposed "wrongs"—which remains an open questions—and condoned them in some way. As the Supervisor of the IAB investigation, Plaintiff alleges that Commissioner Ramsey had the opportunity to review and rectify problems.

As such, claims against Commissioner Ramsey should stand for the claims surrounding Officers Miller and Mroz for unlawful detention and excessive force, Lt. Harner for unlawful detention, and Capt. Trush for unlawful detention. All other § 1983 claims against Commissioner Ramsey for the actions of his subordinates should be dismissed.

### 3. *Fourth and Fourteenth Amendment Claims against the City of Philadelphia*

To establish municipal liability under 42 U.S.C § 1983, a Plaintiff must demonstrate that the municipality itself, throughout the implementation of a policy or a custom, caused the underlying constitutional violation. *See Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 690-91 (1978) ("Local governing bodies…can be sued directly under § 1983…where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or….governmental 'custom'...").

In his Complaint, Plaintiff alleges that his constitutional rights "were violated as a direct and proximate result of the failure of the City and Commissioner Ramsey to properly train, supervise, discipline and control Capt. Trush, Lt. Harner, Sgt. Barclay, Officers Miller and Mroz, regarding the rights of Plaintiff to be free from unlawful search and seizure. (Compl. ¶¶ 54-61). Defendants

argue that there is no evidence that the City of Philadelphia has a practice, custom, or policy of providing false information. In contrast, Plaintiff argues that Officer Mroz had multiple past reports for unnecessary roughness during arrests, which were routinely ignored by the City.

Defendants argue that Plaintiff adduced no credible evidence that the City or Police Commissioner Ramsey had a policy or practice of failing to train, supervise, discipline or control the individual police officer defendants regarding his due process rights. Plaintiff's Exhibit P-1 is a record of the history of complaints that were made against Officer Mroz, Sgt. Barclay, and Officer Miller, where no action was taken against them. Plaintiff implies that this history of inaction surrounding these complaints against these officers reflects a "custom." Plaintiff also argues that liability against municipalities may be based upon a single incident; namely the March 20, 2008 incident. *See Pembur v. City of Cincinnati*, 475 U.S. 469 (1986).

Plaintiff's demonstrated history that the City has not disciplined Officer Mroz, and their failure to discipline Officer Mroz and Miller in this case, does not rise to the level of a *Monell* claim. Even under Plaintiff's version of facts, Plaintiff has not put forth any evidence showing a policy or custom of a constitutional violation. Officer Mroz's past complaints were all independently evaluated and found without merit. Plaintiff has put forward no evidence to indicate that there were any invidious reasons for the City's refusal to pursue these claims. The claims against the City shall be dismissed.

### 4. *Conspiracy Claim under 42 U.S.C. § 1985(3)*

An individual may pursue relief for injury by a conspiracy of two or more persons to deprive him, or a class of persons, of "the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To establish his claim for a conspiracy to violate his civil rights, Plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving any

person or class of persons of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See Sutton v. W. Chester Area Sch. Dist.*, 2004 U.S. Dist. LEXIS 7967 (E.D. Pa. May 5, 2004) (citing *Kelleher v. City of Reading*, 2001 U.S. Dist. LEXIS 14958 (E.D. Pa. Sept. 21, 2001)); *Tucker v. I'Jama*, 361 F. App'x 405, 408 (3d Cir. 2010).

Plaintiff has put forth no evidence demonstrating a conspiracy. This claim shall be dismissed.

C.  Count IV: Officers Miller and Mroz: Common Law Assault and Battery

Plaintiff argues that Officers Miller and Mroz should be found liable for common law assault and battery. (Compl. ¶ 69). As the material facts of the events on March 20, 2008 are disputed,[10] this claim withstands summary judgment.

## CONCLUSION

Based on the foregoing analysis, summary judgment should be granted for all Defendants on all claims except:  Plaintiff's Fourth Amendment Due Process claims against Officers Mroz and Miller for unlawful detention and excessive force; Plaintiff's Fourth Amendment claims against Lieutenant Harner, Captain Trush, and Commissioner Ramsey for unlawful detention; and Plaintiff's common law assault and battery claim against Officers Mroz and Miller.

An appropriate order follows.

---

[10] Defendants do make a strong argument that the Plaintiff failed to prove that Officers Mroz and Miller acted with willful misconduct. (Mot. for Partial Summ. J., at 20.  Plaintiff's remedies are limited by an Act which permits municipal tort liability only for eight discrete categories of negligence, and provides immunity from recovery against a municipality for intentional torts. *See id.*§ 8542. In order to receive compensation, Plaintiff will need to prove 'willful misconduct." *Id.*  Courts have described the requirement of "willful misconduct" as conduct whereby the actor desired to bring about the result that followed, or at least was aware that the result was substantially certain to follow. *See Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. Ct. 1995); *King v. Breach*, 540 A.2d 976, 981 (Pa. Commw. Ct. 1986). "Willful misconduct must be carried out with the intention of achieving exactly that wrongful purpose." *Jones v. City of Philadelphia*, 893 A.2d 837, 843 (Pa. Commw. Ct. 2006).  An officer's behavior may only be willful misconduct if that officer subjectively intends to do something he knows is wrongful. *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994). At this stage of the case, Plaintiff has demonstrated enough material issue of fact to survive summary judgment.  There is an open question about the events of March 20, 2008, which, if true under Plaintiff's version of facts, could prove "willful misconduct."